UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWRENCE McCARTHY,

v.  Case No. 8:09-cr-395-T-33AEP
 8:10-cv-1905-T-33AEP

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant McCarthy's timely-filed motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. D-cv-1; D-45.[1] A review of the record demonstrates that, for the following reasons, the motion to vacate must be **denied.**

**BACKGROUND**

After entering into a plea agreement with the United States, McCarthy pled guilty to Count One, charging him with conspiracy to possess with intent to distribute and to distribute a quantity of a mixture and substance containing a detectable amount of Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. D-29 at 1, D-32, D-33, D-48. McCarthy's written plea agreement contained an appeal waiver clause and a factual basis for the charge to which he pled guilty. D-29 at 12, 14-15. This Court accepted McCarthy's guilty plea and adjudicated him guilty on December 11, 2009. D-37.

---

[1] Docket references to 8:09-cr-395-T-33AEP are denoted herein as "D-__" and docket references to 8:10-cv-1905-T-33AEP are denoted herein as "D-cv-___".

Subsequently, the Court sentenced McCarthy to the bottom of his applicable United States Sentencing Guidelines range to 84 months imprisonment. D-40, D-43, D-46 at 33. McCarthy did not directly appeal his conviction or sentence. Instead, on August 26, 2010, McCarthy filed the instant § 2255 motion.

## OFFENSE CONDUCT

McCarthy conspired with Mary Powers and Robert Whitney to possess with intent to distribute and to distribute a quantity of Oxycodone 30 mg. tablets through a fraudulent prescription scheme from approximately November or December 2008 through March 2009 in Pinellas County, Florida. D-48 at 33, Presentence Investigation Report ("PSR") ¶11. Powers and Whitney provided fraudulent prescriptions[2] to McCarthy who filled them at local pharmacies. D-48 at 33-34, PSR ¶12. Most prescriptions were for 240 30 mg. Oxycodone tablets. D-48 at 34, PSR ¶¶13-14. Powers and Whitney printed a cellular phone number on the fraudulent prescription. The telephone belonged to them for use when the pharmacy called for verification so they could pose as office personnel at the doctor's office listed on the prescriptions. In exchange for the fraudulent prescription, McCarthy return a portion of the Oxycodone pills to Whitney and Powers and retain a portion for his use. D-48 at 34, PSR ¶12. The fraudulent prescriptions were filled at small local pharmacies in Pinellas County. D-48 at 34, PSR ¶¶14-15.

In furtherance of the conspiracy, McCarthy filled two fraudulent prescriptions for 240 30 mg. Oxycodone tablets on February 13 and March 9, and one fraudulent prescription for 180 30 mg. Oxycodone tablets on March 30, 2009. D-48 at 34, PSR ¶¶14-15. McCarthy

---

[2] The prescriptions were printed by Powers and Whitney on their computer.

obtained the fraudulent prescriptions from Mary Powers and Robert Whitney. D-48 at 34, PSR ¶13. The prescriptions listed the name, Florida medical license number, and DEA number of Dr. Nicolas Arrendondo in Tampa, Florida with a cell phone number used by Mary Powers and Robert Whitney. D-48 at 34, PSR ¶16. McCarthy received a portion of the pills from the three fraudulent prescriptions as payment for his involvement in the offense. PSR ¶17.

## PLEA AGREEMENT

McCarthy's plea agreement stated that the statutory maximum sentence was twenty years imprisonment. D-29 at 1. Under the terms of the agreement, the Government agreed not to charge McCarthy with committing any other federal criminal offenses known to the government at the time McCarthy executed the plea agreement. In addition, the Government agreed that 1) Counts Two through Four would be dismissed; 2) any substantial assistance would be considered for a sentence reduction; and, 3) the Government would recommend McCarthy receive a two-level downward adjustment for acceptance of responsibility, plus an additional one-level downward adjustment if McCarthy complied with USSG §3E1.1(b). Id. at 2-5. The plea agreement also provided:

> Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Id. at 2-3. The plea agreement emphasized that such a recommendation did not bind this Court:

> It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Id. at 11.

The plea agreement also contained a limited appeal waiver, under which McCarthy agreed that this Court had "authority to impose any sentence up to the statutory maximum." Id. at 12. McCarthy "expressly waive[d] the right to appeal [his] sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range." Id. The appeal waiver, however, preserved McCarthy's right to appeal on "the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines." Id.

### CHANGE OF PLEA HEARING

At the change of plea hearing, during the colloquy conducted pursuant to Fed. R. Crim. P. 11, the magistrate judge reviewed the sentence appeal waiver with McCarthy and established that he understood the waiver:

> **THE COURT**: Mr. McCarthy, as you sit here now, you would have the right to appeal any sentence you receive in your case. However, by the provisions

4

of your plea agreement you have substantially limited, if not waived, your right to appeal.

Specifically, if you move ahead in your plea agreement to paragraph B five located on page twelve of your plea agreement there is a provision that is entitled "Defendant's Waiver of a Right to Appeal and Right to Collaterally Challenge the Sentence." By this provision, as I said, you have substantially waived your right to appeal or challenge your sentence unless and only if certain events occur.

Those events include, one, the ground that the sentence exceeds the applicable advisory guideline range as determined by the court pursuant to the United States sentencing guidelines; two, the ground that the sentence exceeds the statutory maximum penalty; or three, the ground that the sentence violates the Eighth Amendment to the Constitution; or four, in the event that the United States attorney's office files an appeal you are free from this waiver and you may file an appeal as well.

Mr. McCarthy, do you understand by this provision of your plea agreement you are in effect waiving or giving up your right to appeal or collaterally challenge your sentence unless and if only one of those events occur?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Has anyone forced you or threatened any in any way in order to have you waive your right to appeal?

**THE DEFENDANT**: No, sir.

**THE COURT**: Has anyone promised you anything of value other than what's in the plea agreement in order to have you waive your right to appeal?

**THE DEFENDANT**: No, sir.

**THE COURT**: Do you make this waiver of appeal knowingly and voluntarily?

**THE DEFENDANT**: Yes, sir.

D-48 at 20-22.

The magistrate judge verified McCarthy understood that if any "prediction or estimate of [his] advisory guideline range" his lawyer may have made "proves wrong or incorrect," he "cannot later complain and ask to withdraw from your plea of guilty." Id. at 28.

Asked if he understood, McCarthy stated, "Yes, sir." Id. The Court asked McCarthy if he understood that the district court judge could depart upward or downward from the guidelines range or "sentence [him] to the maximum extent allowed by law in this case," up to "twenty years imprisonment." Id. at 23, 29. Again, McCarthy agreed that he understood. Id. at 24, 29.

## CALCULATION OF MCCARTHY'S GUIDELINES RANGE

Based on a total of 19.8 grams of Oxycodone, the United States Probation Office calculated McCarthy's base offense level at 26 and recommended a three-level decrease for acceptance of responsibility, for a total offense level of 23. PSR ¶¶ 23-32, D-46 at 4. McCarthy's criminal history scored him at category V because of his previous qualifying convictions (8 points), plus reoffending while on release (2 points). PSR ¶¶ 45-47, D-46 at 4. McCarthy's statutory maximum penalty on Count One was 20 years imprisonment. PSR ¶ 76. The Probation Office calculated McCarthy's guidelines range at 84 to 105 months imprisonment. PSR ¶ 77, D-46 at 4.

## McCARTHY'S CRIMINAL HISTORY

Although McCarthy was only 40 years old at the time of sentencing, the description of McCarthy's criminal history dates back to an attempted grand larceny and attempted petit larceny McCarthy committed when he was 17 years old. PSR ¶ 34. His history includes numerous crimes involving stealing and drug use, including:

1) criminal mischief (age 18), PSR ¶ 35;

2) possession of a controlled substance, attempted burglary (age 20), PSR ¶ 36, petit theft (age 20), PSR ¶ 37;

3) burglary, attempted burglary, and possession of a controlled substance (age 20), PSR ¶ 38;

    4) attempted burglary, illegal entry with intent to commit a crime (age 21), PSR ¶ 39; and,

    5) carrying a concealed knife (age 23), PSR ¶ 40.

None of these crimes were used in the calculation of his criminal history points. The points for calculation of his criminal history came from a 1993 bank robbery involving two separate banks (PSR ¶ 42); a 1997 weapons possession charge (PSR ¶ 43); and a 2005 battery (domestic violence) (PSR ¶ 44). These convictions resulted in a criminal history score of eight, plus an additional two points for reoffending within two years following his release, placing him in criminal history category V. PSR ¶¶ 45-46.

## SENTENCING

At sentencing, McCarthy did not challenge the facts set forth in the PSR and agreed that they were true. D-46 at 4. This Court adopted the facts and guideline calculations in the PSR. Id. The Government recommended that McCarthy be sentenced at the low end of the guidelines range. Id. at 5. Counsel made arguments in mitigation revolving around McCarthy's current rehabilitative efforts and his family history, limited schooling, early drug use, and juvenile detention. D-46 at 6-9, 11. Counsel linked McCarthy's criminal convictions to his addictions, making an argument that "McCarthy's past is directly tied to the need to satiate his addictions." Id. at 9-11. Counsel told this Court that "[a]ll of the crimes, Your Honor, which have pushed Mr. McCarthy to a criminal history category guideline of V have been tied to his addictions, every single one of them." Id. at 9. Counsel further argued that McCarthy did not sell the Oxycodone he obtained; he merely kept some pills for personal use and gave the rest to his partners in the scheme. Id. at 10-11. Based on these arguments, counsel urged this Court not to sentence McCarthy to the seven-to-eight year

range, as it was unreasonable under the 18 U.S.C. § 3553(a) sentencing factors. Id. at 12.

This Court recognized McCarthy's rehabilitative efforts but distinguished his arguments concerning his prior criminal history and his request to be treated as a safety-valve qualifying defendant. Id. at 13-15. Counsel continued his arguments in favor of a lesser sentence based on the seriousness of the offense, deterrence, and rehabilitation. Id. at 16-20. Several witnesses testified on McCarthy's behalf. Id. at 26- 30. McCarthy directly addressed this Court. Id. at 30-32. This Court determined that a low-end sentence of 84 months imprisonment, to be followed by a three-year term of supervised release, was appropriate. Id. at 33. The Court found "no mitigating or aggravating circumstances and a sentence within the guideline range is appropriate." The Court was aware of its ability to depart upwards or downwards. Id. at 35-36. The Judge advised McCarthy that, based on his sentencing arguments and his "progress" in his "treatment program. . . I decided that a sentence at the low end of the guidelines was appropriate" instead of a mid-range sentence. Id. at 36. Further, this Court stated:

> I did not depart, however, because I also felt that it would not be appropriate for me to depart downward. The reason you're in Federal Court, Mr. McCarthy, as opposed to State Court is there has to be some consequence to what you have done.
>
> State Court for these types of offenses the penalties are not as severe. And it's normally reserved in these types of cases where there are minor transactions or not the type of transaction that would subject you to the jurisdiction of the Federal Court.
>
> Like I mentioned earlier, and I say it really for your benefit as well as the benefit of the people here supporting you, if this were your first offense the system itself is programmed to minimize the sentence of people who are involved in these types of activities and it's their first offense.
>
> I have come down on sentences for people who have very severe extenuating circumstances such as a 19-year-old who's, you know, doing this

>for the first time, and other types of situations.
>
>I did think long and hard about it, and I considered your particular situation. And while I was very, very impressed with what you've done, I decided to reward you, so to speak, by sentencing you at the low end of the guidelines. But I still felt that a guideline sentence was appropriate.
>
>However, you are very much to be commended for what you have done. The person who benefits by your good behavior is you. You're the person that benefits more than anybody else, so I hope that you will continue in -- on the good path that you have gone down and that you continue to stay away from these types of activities that have caused you such harm in the past. And I hope that you will continue to succeed in that.

D-46 at 36-38.

## WAIVER

It is well established that a voluntary, unconditional guilty plea waives all nonjurisdictional challenges to the constitutionality of the conviction that arose prior to the plea. *See, e.g., Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (guilty plea waives pre-plea ineffective assistance of counsel claim in a section 2255 proceeding); *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (guilty plea waives speedy trial and due process challenges in a section 2255 proceeding; collecting cases); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979) (guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a section 2255 proceeding). McCarthy waived the right to appeal his sentence, directly or collaterally, concerning his guidelines determinations by pleading guilty and not raising such a challenge prior to the entry of his guilty plea.

McCarthy does not claim that the appellate and collateral review waivers were not made knowingly, voluntarily, and competently. Nor could he, given his plea allocution. The waiver provision was explicitly discussed at the change of plea hearing. D-48 at 20-22.

McCarthy does not claim that his sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited bases. McCarthy does not claim that this Court failed to enunciate any rationale for his sentence. Nor could he, given the Court's lengthy rationale set out above.

Instead, McCarthy attempts to overcome the appeal waiver by claiming that his sentence was elevated by counsel's failure to make certain objections at sentencing. McCarthy's claim lacks merit. McCarthy's motion is merely a challenge to his sentence under the guise of a *Strickland* claim. In his motion, McCarthy contends that his counsel was constitutionally ineffective by failing to challenge the calculation of his sentence based on various guideline provisions. Disguising his claims as constitutionally ineffective counsel claims does not remove them from the purview of his appeal waiver. It is apparent that the real motivation for McCarthy's motion stems from his dissatisfaction with the sentence imposed by this Court. Yet, McCarthy knew that he faced a maximum sentence of twenty years imprisonment, and was well aware that this Court could fashion his sentence up to the statutory maximum when he entered his plea. D-48 at 23-24, 28-29. Consequently, if this Court granted McCarthy's section 2255 motion, the Court would permit him to proceed in contravention of the plain meaning of his plea agreement and deny the Government the benefit for which it bargained. *See United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

**DISCUSSION OF THE MERITS**

In his § 2255 motion, McCarthy claims (1) that his counsel was constitutionally ineffective for failing to argue for a two-level minor role reduction (Ground One); (2) that his criminal history contains "[m]isscorings" (Ground Two); and (3) that his "Prior Criminal

10

Record" should be "waive[d]" "so that he may participate and receive the benefits" regarding this Court's "recommend[ed] R-DAP (Residential Drug-Alcohol Program)" (Ground Three). D-cv-1 at 1. Last, McCarthy argues in Ground Four that he needs a "Court Order" "to receive the Community Correctional Center Program (Halfway House) or on Home Confinement through the Home Monitoring System," pursuant to the Second Chance Act of 2007, to begin with one year remaining on his sentence. Id. at 1-2.

<u>Ineffective Assistance of Counsel Claims Are Cognizable</u>

Ineffective assistance claims are cognizable under 28 U.S.C. § 2255. *See Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings). The section 2255 procedural default rule does not apply to ineffective assistance of counsel claims. *Massaro v. United States*, 538 U.S. 500, 502-03 (2003); *Lynn,* 365 F.3d at 1234 n.17. Accordingly, McCarthy's complaints as to Grounds One through Three are not procedurally defaulted even though they have not been raised previously.

**STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by

11

the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second-guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

**CALCULATION OF SENTENCE CLAIMS**

The bulk of McCarthy's complaints about his counsel revolve around claims that his counsel was constitutionally ineffective by failing to raise certain objections or arguments concerning the calculation of his sentence. McCarthy persists in these claims despite the arguments counsel did raise at sentencing and the benefits McCarthy received from counsel's successful negotiation of a favorable plea agreement encompassing his criminal activities. None of McCarthy's contentions have merit because he fails to show that any of the bases he suggests would have been successful, even if his counsel had raised an argument or objected in the manner McCarthy now advocates.

Simply put, McCarthy's criminal history and offense conduct were amply examined by his counsel and nothing in the record suggests that this Court was inclined to sentence McCarthy to anything other than the 84-month low-end guidelines sentence he received, in large part due to his criminal history and this Court's belief that McCarthy's past behavior made it more likely than not that he might reoffend.

McCarthy's post-sentencing contentions run contrary to his statements to this Court that he did not "have any objections as to the factual accuracy" of the PSR. D-46 at 4. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) (defendant's failure to object to allegations of fact in PSR constitutes admission of those facts for sentencing purposes); *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (factual statements in PSR were deemed admitted as true because defendant raised no objections to them); *see also United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006) (failure to object to allegations of fact in PSR admits those facts for sentencing purposes). In any event, the question of whether McCarthy had further reason to contest the PSR in the manner he now suggests has no bearing on the fact that his failure to do so constituted an admission. *See*

*Wade*, 458 F.3d at 1277. Even assuming there was some contradiction between his admission of guilt and his sentencing-related statements, a defendant's sworn declarations in open court carry a strong presumption of verity that is not overcome by the later presentation of conclusory and contradictory allegations. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *accord United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). In any event, the entire record shows that McCarthy's guilty plea was knowing, voluntary, and intelligent and was supported by a sufficient factual basis. See D-48 at 6-14, 20-24, 27-36. The district court is permitted to make a strong presumption of truth regarding statements made by a defendant during a plea colloquy. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While [Fed. R. Crim. P.] 11 is not insurmountable, there is a strong presumption that the statements made during the [guilty plea] colloquy are true."). McCarthy's implicit assertion to the contrary is speculative and refuted by the clear record in this case. Consequently, McCarthy's self-serving claim that he would not have pled guilty "but for" the purported error is meaningless.

In examining McCarthy's claims, some have been previously raised, in some fashion, and were unsuccessful. For example, when his counsel spoke in mitigation of his sentence, counsel asked this Court to consider that McCarthy's role was less than that of Whitney and Powers and that the Oxycodone he kept was a much smaller amount than Whitney and Powers took. D-46 at 10-12. This argument closely mirrors the argument McCarthy now raises in Ground One, that his role was less than that of the others and his counsel should have argued for a sentencing reduction on that basis. D-cv-1 at 3-4, 6-7.

The arguments McCarthy now raises cannot conceivably support collateral relief, and failure to raise them on appeal, or at any other time, was not ineffective assistance of

counsel. McCarthy offers nothing further other than his own self-serving allegations as proof to support his burden. For example, McCarthy complains in Ground Two that his criminal history should have been IV instead of V because his reoffender points should have been less. He argues that the March 7, 2007 battery sentence of "time served" was over 60 days due to delays in the State of Florida's legal process. He claims that the sentence should have been "only . . . 20 or 30 days." D-cv-1 at 7. If this had not occurred, McCarthy contends, his criminal history would have been less because he "was not actually sentenced by a Judge to any 60-day or more term of confinement and lawfully should only score 1 point for the charge." Id. McCarthy attaches a Bureau of Prisons printout to his motion showing his "earliest date of offense as March 30, 2009" and claims this puts him "23 days (outside) the two year statute of limitations to be able to give him the 2 points under USSG § 4A1.1(e)." Id. at 8. He is wrong.

Contrary to McCarthy's claims, the uncontested facts in the PSR show that he served 78 days jail time starting March 7, 2007 and this Court added two points to his criminal history score pursuant to USSG §4A1.1(e) because he had committed his offense less than two years after he had been released from custody. PSR ¶ 46. The "fraudulent prescription scheme" occurred "from approximately November 2008 through March 2009" and clearly puts McCarthy in the two-year time frame for a two-point enhancement to his criminal history score. D-48 at 33. This Court, in determining a reasonable sentence, knew it possessed "the authority to depart from the guidelines." D- 46 at 36. Such a decision to depart upwards or downwards pursuant to *Kimbrough v. United States*, 552 U.S. 85, 109 (2007), would "allow[] a district court to vary from the guidelines based solely on its judgment that the policies behind the guidelines are wrong." *United States v. Irey*, 612 F.3d

1160, 1212 (11th Cir. 2010). This Court clearly stated its reasons for imposing a within guidelines, low-end sentence. Id. at 36-38.

McCarthy's challenge to his sentence attacking a guidelines application is waived by the explicit terms of his plea agreement. McCarthy's failure to object at sentencing attests to the veracity of this conviction and this Court properly assessed him two criminal history points pursuant to USSG §4A1.1(e). Therefore, McCarthy is not entitled to "relief from his sentence."

Next, McCarthy claims that his counsel was constitutionally ineffective for failing to argue that his "Prior Criminal Record" should be "waive[d]" "so that he may participate and receive the benefits" regarding this Court's "recommend[ed] R-DAP (Residential Drug-Alcohol Program)" (Ground Three). D-cv-1 at 1. Again, McCarthy misconstrues the record.

At sentencing, this Court told McCarthy, as part of his sentence concerning supervised release, he "shall participate in a substance abuse program, outpatient and/or inpatient, and follow the probation officer's instructions regarding the implementation of this Court directive." D-46 at 34. McCarthy requested this Court to recommend Coleman as his designation by the Bureau of Prisons. Id. at 39. When this Court inquired whether "there were any other recommendations that you would like me to make," counsel referred to the "already mentioned substance abuse treatment" and this Court indicated "that will reduce your sentence, Mr. McCarthy, participation in that program." Id. at 39-40. Nothing further is on the sentencing record concerning R-DAP (Residential Drug-Alcohol Program)[3] as

---

[3] Pursuant to 18 U.S.C. § 3553(a), district courts, in imposing a sentence, must consider the applicable factors in 18 U.S.C. § 3553(a)(1)-(7), which include "the need for

McCarthy suggests. The transcript shows that, although this Court considered his need for drug abuse treatment in determining the appropriate sentence, it was McCarthy's significant criminal history that pushed this Court to decide that a downward variance from the advisory sentencing guidelines range was unwarranted. McCarthy's judgment does reflect this Court's recommendation to the Bureau of Prisons ("BOP") that McCarthy be allowed to participate in a 500-hour intensive drug treatment program. D-43 at 2.

McCarthy argues that "his prior criminal history prevents him from enrolling and receiving the benefits of the R-DAP" and asks this Court "to order that his prior criminal history be set-aside only for the purposes of enrolling in and receiving the benefits of the R-DAP Program." D-cv-1 at 8. McCarthy attaches no documents or declarations to his motion from the BOP explaining his claimed lack of eligibility. McCarthy offers no reasoned or principled basis for challenging his criminal history category. Moreover, this Court cannot and does not guarantee that the Bureau of Prisons will comply with its recommendations. See 18 U.S.C. § 3621(b) (giving the Bureau of Prisons the authority and the discretion to designate a federal prisoner's place of confinement and providing that sentencing court recommendations are not binding on the BOP).

Last, McCarthy argues in Ground Four he needs a "Court Order" "to receive the Community Correctional Center Program (Halfway House) or Home Confinement through

---

the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2)(D). Moreover, "every prisoner with a substance abuse problem [must] have the opportunity to participate in appropriate drug abuse treatment." 18 U.S.C. § 3621(e)(1). Thus, subject to appropriations, the Federal Bureau of Prisons offers prisoners with drug abuse problems the opportunity to participate in the Residential Drug Abuse Treatment Program ("R-DAP"). 18 U.S.C. § 621(e)(1).

17

the Home Monitoring System pursuant to the Second Chance Act of 2007[4] to begin with one year remaining on his sentence. Id. at 1-2. The relief McCarthy seeks is solely within the discretion of the BOP and any order from this Court, should that be legally feasible, would merely be a recommendation to the BOP to consider placing McCarthy in a residential reentry center when McCarthy is 17 to 19 months away from his projected release date. *See Stanko v. Obama*, 2010 WL 3517425 (3d Cir. Sep. 10, 2010). McCarthy offers no support in Ground Four to establish a reasoned or principled basis to seek the relief he asks this Court to provide. Nor can he ask this Court to modify its imposed sentence in the way he suggests. *See United States v. Diaz-Clark*, 292 F.3d 1310, 1315-19 (11th Cir. 2002) (holding that district courts have no "inherent authority" to modify a defendant's sentence and, instead, may do so only within the confines of 18 U.S.C. § 3582(c)). Consequently, McCarthy fails to establish prejudice under *Strickland* for any of his grounds and as such, his claims must be denied.

### STATEMENT ON NEED FOR AN EVIDENTIARY HEARING

McCarthy is not entitled to an evidentiary hearing. A defendant has the burden of establishing the need for an evidentiary hearing and he will be entitled to a hearing only if his allegations, if proven, would establish his right to collateral relief. *See Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc). "Under Rules Governing

---

[4] The Second Chance Act of 2007 provides that "[t]he Director of the Bureau of the Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the re-entry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1) (as amended by the Second Chance Act of 2007, Pub. L. No. 110-119, April 9, 2008).

Section 2255 Cases, Rule 4(b), a district court faced with a § 2255 motion may make an order for its summary dismissal "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]" *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (quoting 28 U.S.C. foll. § 2255). Accordingly, no hearing is required when the record establishes that a section 2255 claim lacks merit, *see United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984), or that it is defaulted *see McCleskey v. Zant*, 499 U.S. 467, 494 (1991). McCarthy has not established any basis for an evidentiary hearing because the issues he raises are waived, defaulted, and facially insufficient to merit relief.

Accordingly, the Court orders:

That McCarthy's 28 U.S.C. § 2255 motion (D-cv-1; D-45) is denied. The Clerk is directed to enter judgment against McCarthy and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,

' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on December 14, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: Kelly Clement Howard-Allen
Lawrence G. McCarthy